COMMONWEALTH of Pennsylvania,
Appellee

v.

Beth A. THOMAS, Appellant.

Superior Court of Pennsylvania.

Argued June 26, 2012.

Filed Aug. 17, 2012.

Edward J. Bilik, Greensburg, for appellant.

Christiann O. Flanigan, Assistant District Attorney, Greensburg, for Commonwealth, appellee.

BEFORE: OLSON, J., WECHT, J., and PLATT, J.*

* Retired Senior Judge assigned to the Superior Court.

OPINION BY PLATT, J.

Appellant, Beth A. Thomas, appeals from the judgment of sentence following her conviction for violations of the Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780–113(a)(30) and (16). We affirm.

The parties stipulated to the pertinent facts. On June 1, 2009, Appellant delivered thirty-three Percocet pills to a police informant. (*See* Trial Court Opinion, 12/07/11, at 1). The thirty-three pills have an aggregate weight of 17.4 grams; however, only 330 mg of that weight is the pure narcotic, Oxycodone, the remaining weight is Acetaminophen, binders, and fillers. (*See id.*). The trial court convicted Appellant after a non-jury trial. On October 7, 2011, Appellant was sentenced pursuant to 18 Pa.C.S.A. § 7508 to the mandatory minimum sentence of not less than three nor more than six years of incarceration. The instant, timely appeal followed.[1]

On appeal, Appellant raises one issue for our review.

Did the trial court commit an error of law in sentencing [Appellant] to a mandatory term of incarceration pursuant to 18 Pa.C.S.A. § 7508(a)(2) when the statute is unconstitutional and violates [Appellant's] right to Equal Protection as applied to the controlled substance of Oxycodone and its various forms?

(Appellant's Brief, at 7).

█ Our scope and standard of review is as follows.

Our Court exercises plenary review over questions of law, including the constitutionality of a statute. Further, our Court recognizes that the Equal Protection guarantee under the Pennsylvania Constitution is analyzed under the same standards as the federal constitution.

When reviewing the constitutionality of a statute, our Court has reaffirmed that:

there is a strong presumption in the law that legislative enactments do not violate the constitution. Moreover, there is a heavy burden of persuasion upon one who challenges the constitutionality of a statute. While penal statutes are to be strictly construed, the courts are not required to give the words of a criminal statute their narrowest meaning or disregard the evident legislative intent of the statute. A statute, therefore, will only be found unconstitutional if it "clearly, palpably and plainly" violates the constitution.

[*Commonwealth v.*] *McCoy*, 895 A.2d [18], 29–30 [ (Pa.Super.2006) ]. All doubt is to be resolved in favor of sustaining the legislation.

*Commonwealth v. Harley*, 924 A.2d 1273, 1281 (Pa.Super.2007), *appeal dismissed*, 600 Pa. 458, 967 A.2d 376 (2008) (some quotation marks and most citations omitted). Because convicted drug dealers are not a suspect class and the classification does not involve the exercise of a fundamental or important right, "only a minimum level of scrutiny need be applied to determine whether the statute bears a rational relationship to a legitimate legislative objective." *Commonwealth v. Eicher*, 413 Pa.Super. 235, 605 A.2d 337, 352 (1992), *appeal denied*, 533 Pa. 598, 617 A.2d 1272 (1992) (citation omitted); (*see also* Appellant's Brief, at 16).

The statute at issue in the present matter is 18 Pa.C.S.A. § 7508(a)(2), which provides in pertinent part:

§ 7508. **Drug trafficking sentencing and penalties**

---

1. Appellant was ordered to file, and did file a timely concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court filed an opinion.

(a) **General rule.**—Notwithstanding any other provisions of this or any other act to the contrary, the following provisions shall apply:

\* \* \*

(2) A person who is convicted of violating section 13(a)(14), (30) or (37) of The Controlled Substance, Drug, Device and Cosmetic Act where the controlled substance or a mixture containing it is classified in Schedule I or Schedule II under section 4 of that act and is a narcotic drug shall, upon conviction, be sentenced to a mandatory minimum term of imprisonment and a fine as set forth in this subsection:

\* \* \*

(ii) when the aggregate weight of the compound or mixture containing the substance involved is at least ten grams and less than 100 grams; three years in prison and a fine of $15,000 or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity; however, if at the time of sentencing the defendant has been convicted of another drug trafficking offense: five years in prison and $30,000 or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity[.]

*Id.* Appellant argues that our Courts have not addressed the constitutionality of § 7508(a)(2) with respect to Oxycodone. (*See* Appellant's Brief, at 17). Appellant further argues that the current sentencing scheme "does not bear a fair and substantial relation to the purpose of imposing more severe penalties on those who possess and/or deliver greater quantities of Oxycodone[,]" because it uses an aggregate weight rather than looking at the pure weight of the controlled substance, thus more harshly punishing those individuals who sell "heavy" pills rather than individuals who sell pills with a greater quantity of the controlled substance. (Appellant's Brief, at 17–18). While the precise question of whether mandatory sentences for controlled substances based upon the aggregate weight of prescription pills may be a matter of first impression in this Commonwealth, both the United States Supreme Court and this Court have addressed the constitutionality of a sentencing scheme based upon aggregate weight with respect to other non-prescription controlled substances.

In *Chapman v. United States,* 500 U.S. 453, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991) (superseded by statute), the Supreme Court addressed due process and equal protection challenges to the federal aggregate weight sentencing scheme as applied to LSD, a substance where the actual drug weighs very little and the vast majority of the aggregate weight is made up of the blotter paper or other carrier substance. *See id.* at 455–56, 111 S.Ct. 1919. Then Chief Justice Rehnquist, writing for the majority, found the aggregate weight scheme to be constitutional, stating:

We find that Congress had a rational basis for its choice or penalties for LSD distribution. The penalty scheme set out in the Anti–Drug Abuse Act of 1986 is intended to punish severely large-volume drug traffickers at any level. It assigns more severe penalties to the distribution of large quantities of drugs. By measuring the quantity of drugs according to the "street weight" of the drugs in the diluted form in which they are sold, rather than according to the net weight of the active component, the statute and the Sentencing Guidelines increase the penalty for persons who possess large quantities of drugs, regardless of their purity. That is a rational sentencing scheme.

This is as true with respect to LSD as with respect to other drugs. Although LSD is not sold by weight, but by dose, and a carrier medium is not, strictly speaking, used to "dilute" the drug, that medium is used to facilitate the distribution of the drug.... Congress was also justified in seeking to avoid arguments about the accurate weight of the pure drugs which might have been extracted from blotter paper had it chosen to calibrate sentences according to that weight.

*Id.* at 465–66, 111 S.Ct. 1919 (internal citation and footnote omitted).

In *Commonwealth v. Crowley*, 413 Pa.Super. 554, 605 A.2d 1256 (1992), this Court held that a mandatory minimum sentence based upon the aggregate weight of cocaine did not violate either the Federal or Pennsylvania Due Process Clauses.[2] In upholding the constitutionality of the sentencing scheme, this Court stated:

... appellant's argument proves both too much and too little. Too much, in the sense that, by accepting appellant's own premise that narcotics such as heroin and cocaine are generally marketed in mixtures or compounds, it does not seem unreasonable or irrational for a legislature to deal realistically with the marketing of the mixture or compound rather than the handling of the pure narcotic. Too little, in the sense that while it may not be wise to let the possessor of the pure or a purer product escape with a lighter penalty than that going to the possessor of the drug in its ordinary marketable form, it is not necessary for a legislature to attempt to eradicate all evil, but only part of it; as the Court said in *Pennsylvania v. Ashe*,

302 U.S. 51, 55, 58 S.Ct. 59, 60, 82 L.Ed. 43 (1937), " The comparative gravity of criminal offenses and whether their consequences are more or less injurious are matters for [the state's] determination." No doubt the [Pennsylvania] legislature, when it adopted the statutory scheme here in question ... had in mind a more flexible pattern of handling drug offenses ... considering that possessors of greater quantities of drugs should be punished more seriously because they are more likely to be dealers or to be capable of becoming such than possessors of smaller quantities, or because the greater quantities present a greater threat to society. Certainly to this extent the legislation cannot be treated as irrational. Taking the additional knowledge that heroin and cocaine at least are generally marketed in a diluted or impure state, the rationale of striking at the mixture or compound rather than at the pure quantity involved becomes evident: the possessor of 50 "bags" of five per cent pure heroin should arguably be punished no differently from a possessor of 50 bags with 10 per cent heroin. The State cannot be expected to make gradations and differentiations and draw distinctions and degrees so fine as to treat all law violators with the precision of a computer....

*Id.* at 1258 (quoting *United States ex rel. Daneff v. Henderson*, 501 F.2d 1180, 1184 (2d Cir.1974)). We further noted:

The legislature enacted [the sentencing scheme] to deter the large-scale distribution of controlled substances, thus decreasing the number of persons potentially harmed by the drug use. We note, however, that controlled sub-

---

**2.** We again note that although the instant matter concerns the Federal and State Equal Protection Clauses, the analysis based upon the reasonableness of the statute is functional-

ly the same. *See Harley, supra; see also Commonwealth v. Parker White Metal Co.,* 512 Pa. 74, 515 A.2d 1358, 1365 (1986).

stances are typically sold in a diluted state. In cases such as this, where the controlled substance has been "cut," the substance is rendered more harmful to society because the dilution increases the potential number of persons who will partake of the proscribed controlled substance. The increased potential for harm to society justifies the imposition of more severe penalties for the possession of large amounts of a diluted controlled substance than for smaller amounts of a pure controlled substance. Further, the possession of large amounts of a diluted controlled substance indicates an intent to engage in the large-scale distribution of controlled substances, the very conduct that [the sentencing scheme] is designed to deter. . . .

*Id.* at 1258–59 (quoting *Sheriff, Humboldt County v. Lang,* 104 Nev. 539, 763 P.2d 56, 58–59 (1988)).

This Court concluded that the legislature was aware of the fact that cocaine is generally marketed in an impure state and enacted the sentencing scheme to "deal with an ever burgeoning area of criminal activity—a drug epidemic the effect of which pervades every aspect of our daily lives." *Id.* at 1260. We accordingly upheld the constitutionality of the sentencing scheme stating that a person in possession of a larger quantity of the drug exposes himself to a greater degree of punishment since that person is likely to be a dealer. *See id.* Thus, there was a reasonable basis for the use of aggregate weight in determining the degree of punishment. *See id.*

Further, while this Court has not addressed the issue of the constitutionality of aggregate weight sentencing schemes as applied to narcotic pills, other state and federal courts have, and all have upheld the constitutionality of similar sentencing schemes. *See, e.g., U.S. v. Bayerle,* 898 F.2d 28 (4th Cir.1990), *cert. denied,* 498 U.S. 819, 111 S.Ct. 65, 112 L.Ed.2d 39 (1990) (rejecting due process challenge to sentencing scheme based upon aggregate weight of Dilaudid); *Van Ens v. Florida,* 48 So.3d 997 (Fla. 5th DCA 2010), *review denied,* 59 So.3d 110 (Fla.2011) (sentencing scheme based upon aggregate weight of the narcotic pill Lorcet did not violate either equal protection or due process); *North Carolina v. Jones,* 85 N.C.App. 56, 354 S.E.2d 251 (1987), *review denied,* 320 N.C. 173, 358 S.E.2d 61 (1987), *cert. denied,* 484 U.S. 969, 108 S.Ct. 465, 98 L.Ed.2d 404 (1987) (same with respect to Dilaudid).[3]

■ Here, we see no meaningful difference between the sentencing treatment of pills such as Percocet, Lorcet, and Dilaudid, and LSD, cocaine. Appellant fails to develop an argument for a constitutional distinction. Thus, based upon this Court's holding in *Crowley,* we hold that a sentencing scheme based upon the aggregate weight of pills containing a controlled substance, including Oxycodone does not violate either the Federal or Commonwealth Equal Protection Clause.

■ Further, we note that Appellant does not dispute or even address *Chapman* or *Crowley.* Rather, Appellant argues that the federal sentencing scheme was changed in 2003 to reflect the differences between narcotic pills and other types of drugs by measuring Oxycodone by pure rather than aggregate weight. (*See* Appellant's Brief, at 14). However, this Court has previously addressed and

---

**3.** This Court is not bound by decisions in sister jurisdictions, but may find them persuasive. *See Branham v. Rohm and Haas Co.,* 19 A.3d 1094, 1107 (Pa.Super.2011), *appeal denied,* —— Pa. ——, 42 A.3d 289 (2012).

rejected equal protection arguments based upon inconsistencies between the federal sentencing scheme and Pennsylvania's sentencing scheme with respect to mandatory sentencing in drug cases. *See Eicher, supra,* at 352–53. In so holding, this Court stated:

In equating the state penalties with those imposed by the federal government, appellant attempts to compare apples with oranges. The problem with appellant's erroneous analysis is that the two systems simply are not identical. Individuals convicted of federal drug-related crimes are not similarly situated to those who are convicted of state drug offenses. Appellant has not referred us to any authority or precedent, nor are we aware of any, which would preclude the state legislatures from enacting state drug-related crimes and prescribing the punishments therefor merely because Congress has also enacted similar federal drug-related crimes. Appellant has similarly failed to refer us to any authority or precedent, and we are not aware of such, which would forbid the states' use of a different penalty scheme than that devised by Congress. Because individuals in the federal and state criminal justice systems are not similarly situated, we discern no violation of appellant's equal protection rights on this basis.

*Id.* Thus, Appellant's equal protection argument based upon the differing treatment of Oxycodone in the federal sentencing scheme lacks merit.

 Lastly, Appellant argues that there is pending legislation in the Pennsylvania legislature that would allow trial courts a greater degree of discretion in departing from the mandatory sentence and that the trial court might have done so in this matter. (*See* Appellant's Brief, at 18–19). However, this Court applies current statutory law until the Legislature repeals or amends it. Further, absent clear and manifest intent, legislation is presumed not to be retroactive. *See* 1 Pa.C.S.A. § 1926. Accordingly, we decline to indulge in speculation about what the trial court might have done if the legislature had passed changes in the sentencing code. This argument is without merit.

Appellant fails to develop a meaningful distinction for special treatment of Percocet or Oxycodone under our mandatory sentencing scheme. The plain meaning of § 7508 requires that all controlled substances be measured by their aggregate weight for purposes of mandatory sentencing. *See Crowley, supra.* Appellant failed to overcome the presumption of constitutionality.

Judgment of sentence affirmed.