STATE OF NORTH CAROLINA v. AARON PITTMAN

No. COA11-1114

(Filed 20 March 2012)

**1. Pretrial Proceedings—joinder of cases—offenses closely related and connected—no deprivation of fair trial**

The trial court did not abuse its discretion in an insurance fraud, obtaining property by false pretenses, and exploitation of an elder adult case by granting the State's motion to join defendant's case with his wife's (Dew) case where the offenses committed by both parties were closely related and connected. Further, the trial court's decision to grant the motion for joinder did not deprive defendant of a fair trial where Dew made statements tending to place blame on defendant. The State offered extensive evidentiary support for the jury's finding of guilt and Dew's statements bore limited relevance to the principal issue before the jury.

**2. Appeal and Error—preservation of issues—admission of evidence—wife's statements—joint trial—no objection— no redaction—no plain error argued**

Defendant's argument that evidence of statements made by his wife to investigating officers in an insurance fraud, obtaining property by false pretenses, and exploitation of an elder adult case should have been deemed inadmissible at their joint trial was dismissed. Defendant did not properly preserve this issue for appellate review given his failure to object to the introduction of the challenged statements, to seek redaction of the statements, or to argue that the admission of the challenged evidence constituted plain error.

Appeal by defendant from judgments entered 3 March 2011 by Judge R. Allen Baddour, Jr. in Granville County Superior Court. Heard in the Court of Appeals 8 February 2012.

*Attorney General Roy Cooper, by Assistant Attorney General M. Lynne Weaver, for the State.*

*Mercedes O. Chut for defendant.*

ELMORE, Judge.

Aaron Pittman (defendant) appeals from judgments entered upon jury convictions for 1) insurance fraud, 2) obtaining property by false pretenses, and 3) exploitation of an elder adult. After careful consideration, we find no error.

In late 2003 defendant was employed as an insurance salesman. Around this time, he went to the home of Effie Satterwhite, a woman in her eighties who was limited in her abilities to read and write. Defendant spoke to Satterwhite about purchasing insurance, and Satterwhite decided to buy a $10,000.00 burial insurance policy from defendant. Defendant helped Satterwhite complete the forms. The policy listed Satterwhite's half-sister, Sally, as the beneficiary.

Defendant continued to have a relationship with Satterwhite after he sold the policy to her. After some time, defendant introduced Satterwhite to his wife, Mildred Dew. Satterwhite then developed a relationship with defendant and Dew, and the couple occasionally cleaned Satterwhite's house. During one of his visits, defendant took copies of Satterwhite's driver's license and some of her financial records.

In October 2004, defendant sold Satterwhite two additional insurance policies, 1) another $10,000.00 life insurance policy and 2) a $50,000.00 annuity. Again, defendant helped Satterwhite complete the necessary paperwork. These policies also listed Sally as the beneficiary. However, sometime later Dew was made the beneficiary on all three of Satterwhite's policies. Both Satterwhite's and Dew's signatures appeared on the change forms, and Dew was listed as Satterwhite's niece. After that, Dew began taking money out of the cash values of the life insurance policies and withdrawing money from the annuity. By March 2008, the annuity was "totally cashed out" and had "no value" remaining.

On 5 January 2010, Satterwhite went to her local bank to withdraw money. She was informed by the teller that she did not have enough money in her account to complete her withdrawal. Satterwhite was alarmed by this discovery, and she then spoke with the teller manager. The manager informed Satterwhite that defendant was a joint owner on her account, and that defendant had opened a checking account and linked it to her account. At that time, the local police department was contacted, and Detective Ricky Cates was assigned to the case.

Detective Cates discovered that defendant had changed the address listed on Satterwhite's account so that the monthly statements were being sent directly to him. Detective Cates also discovered that defendant had linked his account to Satterwhite's under the guise that he was her son. A review of Satterwhite's bank records also revealed that defendant had made a series of large cash withdrawals from her account.

Defendant and Dew were then arrested on 21 January 2010. At the time of his arrest, defendant was in possession of Satterwhite's driver's license and the title to her car. Defendant and Dew were each charged with 1) two counts of insurance fraud, 2) one count of obtaining property by false pretenses, and 3) one count of exploitation of an elder adult. Prior to trial, the State filed a motion to allow for joinder of defendant and Dew for trial. On 21 February 2010, defendant filed an objection to the State's motion for joinder, but the trial court granted the motion nonetheless.

On 28 February 2011 the case came on for trial by jury. At trial, the State offered into evidence prior statements made by Dew. These statements, in sum, established 1) that "her husband, Aaron Pittman told her to sign the form[s]," and 2) that "she thought it was wrong,

but she trusted her husband." Defendant testified at trial in his own defense. On 3 March 2011, the jury found defendant guilty of 1) insurance fraud, 2) obtaining property by false pretenses, and 3) exploitation of an elder adult. The trial court then sentenced defendant to 1) 96 to 125 months imprisonment for insurance fraud and obtaining property by false pretenses and to 2) 21 to 26 months imprisonment for exploitation of an elder adult. These sentences were ordered to be served consecutively. Defendant now appeals.

[1] Defendant first argues that the trial court violated North Carolina law by granting the State's motion for joinder. Defendant further argues that the trial court's decision to grant the motion for joinder deprived him of a fair trial. We disagree.

"Joinder decisions are in the sound discretion of the trial court." *State v. Fultz*, 92 N.C. App. 80, 82, 373 S.E.2d 445, 447 (1988). According to our General Statutes, charges against two or more defendants may be joined for trial if the charges 1) are part of a common scheme or plan, 2) are part of the same act or transaction, or 3) are closely connected in time, place, and occasion. *See* N.C. Gen. Stat. § 15A-926(b)(2) (2011). In fact, "public policy strongly compels consolidation as the rule rather than the exception when each defendant is sought to be held accountable for the same crime or crimes." *State v. Paige*, 316 N.C. 630, 643, 343 S.E.2d 848, 857 (1986) (citation and quotations omitted). Thus, "the test we apply on review is whether the offenses are so separate in time and place and so distinct in circumstances as to render consolidation unjust and prejudicial to the defendant." *Fultz*, 92 N.C. App. at 83, 373 S.E.2d at 447 (quotations and citations omitted).

Here, defendant and Dew were charged with the same crimes, and these crimes arose out of the same common scheme. Defendant sold the policies to Satterwhite, and Dew signed the paperwork necessary to add herself as the beneficiary on the policies. Thus, the offenses committed by defendant and Dew were closely related and connected. As such, the decision of the trial court to join defendant and Dew for trial did not violate state law.

Defendant also argues that the decision of the trial court deprived him of a fair trial, because the State was permitted to offer statements of Dew that placed all of the blame for her charges on defendant. We disagree.

Our Supreme Court has held that

> [e]ven though the defendants in a joint trial may offer antago-
> nistic or conflicting defenses, that fact alone does not neces-
> sarily warrant severance. The test is whether the conflict in
> defendants respective positions at trial is of such a nature that,
> considering all of the other evidence in the case, defendants
> were denied a fair trial.

*State v. Lowery*, 318 N.C. 54, 59, 347 S.E.2d 729, 734 (1986) (quota-
tions and citations omitted).

Here, the record clearly establishes that defendant did not dis-
pute the fundamental accuracy of the State's showing that: 1) he sold
Satterwhite multiple insurance policies and an annuity; 2) he later
changed the beneficiaries associated with those policies to Dew and
converted Satterwhite's bank accounts from individual accounts
solely owned by Satterwhite to joint accounts owned by both defend-
ant and Satterwhite; and 3) he obtained money from the insurance
policies, the annuities, and the joint accounts and used that money
for personal purposes. Thus, the essential difference between the evi-
dence presented by the State and the evidence presented on behalf of
defendant was that the State's evidence tended to show that
Satterwhite never authorized or approved of defendant's actions
while the evidence presented on defendant's behalf tended to show
that he had been acting on Satterwhite's behalf, in Satterwhite's best
interests, or with Satterwhite's consent. Therefore, the central issue
that the jury was required to resolve was not whether the relevant
financial transactions occurred but whether Satterwhite had autho-
rized or approved of those transactions.

When viewed in this context, Dew's statements likely had little
bearing on the jury's evaluation of the credibility of defendant's claim
to have acted in Satterwhite's best interests or with her consent.
Thus, we are not persuaded that Dew's statements played a signifi-
cant role in the jury's determination of the issue of defendant's guilt
given that Dew's statements shed little or no light on the intent with
which defendant acted. As a result, we conclude that the trial court's
joinder decision did not impermissibly prejudice defendant, because
1) the State offered extensive evidentiary support for the jury's find-
ing of guilt and 2) Dew's statements bore limited relevance to the
principal issue before the jury. Thus, we are unable to agree that
Dew's statements denied him of a fair trial.

**[2]** Defendant next argues that evidence of the statements made by Dew to investigating officers should have been deemed inadmissible at their joint trial. We decline to reach this issue on the grounds that defendant did not properly preserve this issue for appellate review given his failure to object to the introduction of the challenged statements, to seek redaction of the statements, or to argue that the admission of the challenged evidence constituted plain error.

"In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection, or motion." N.C.R. App. P. 10(a)(1). As a result, where defendant "either did not object to admission of the evidence, or failed to state any grounds for his objection [, he] . . . failed to preserve these [issues] . . . for review other than for plain error." *State v. Locklear*, 363 N.C. 438, 451, 681 S.E.2d 293, 304 (2009) (citing *State v. Garcell*, 363 N.C. 10, 35, 678 S.E.2d 618, 634, *cert. denied*, ___ U.S. ___, 130 S. Ct. 510, 175 L. Ed. 2d 362 (2009)).

Here, the challenged statements were admitted into evidence during the testimony of Mr. Tesh, who interviewed Dew during the course of his investigation. Near the beginning of his testimony, Mr. Tesh asked to read aloud from a statement he had taken from Dew. At that point, defendant's trial counsel interposed a general objection, which the trial court overruled. Subsequently, Mr. Tesh testified in considerable detail about a series of documents that he had shown to Dew and the comments that Dew made during the course of their discussion. Among other things, Mr. Tesh told the jury that Dew had denied any knowledge of at least seven of these documents, that she denied having signed several documents that bore her name, that she signed other documents in compliance with instructions that she had received from Defendant, and that, while she thought that signing an authorization allowing the withdrawal of money from a particular account was wrong, she signed the relevant document anyway because she trusted her husband. Defendant never objected to any portion of the challenged testimony or asked to have any of the statements upon which his argument is predicated redacted during Mr. Tesh's trial testimony. Moreover, defendant did not object when Dew's trial counsel elicited testimony from Mr. Tesh to the same effect as the testimony that had been elicited from Dew on direct examination or when Mr. Tesh testified that he believed Dew was

being truthful with him. As a result, given the absence of any contemporaneous objection to the admission of the challenged testimony, defendant has failed to preserve this issue for appellate review. Moreover, "since defendant does not argue plain error on appeal, defendant has not preserved for appellate review any issue as to the admission of [Dew's] statement[s]." *State v. Ross*, ___ N.C. App. ___, ___ S.E.2d ___, ___ (2011). As a result, we conclude that defendant did not properly preserve his challenge to the admission of Dew's testimony, and we decline to reach the merits of this issue.

No Error.

Judges BRYANT and ERVIN concur.