An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA14-1246

Filed: 20 October 2015

Alamance County, Nos. 11CRS057238; 12CRS004785, 050991

THE STATE OF NORTH CAROLINA

v.

MARLETTE TOOMER, Defendant.

_____

Alamance County, Nos. 11CRS057237; 12CRS004786

THE STATE OF NORTH CAROLINA

v.

VERNON TOOMER, Defendant.

Appeal by defendants from judgments entered on or about 24 January 2014 by Judge G. Wayne Abernathy in Superior Court, Alamance County. Heard in the Court of Appeals 22 April 2015.

> *Attorney General Roy A. Cooper III, by Assistant Attorney General Alexandra M. Hightower and Special Deputy Attorney General Joseph E. Herrin, for the State.*

*Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Kathryn L. VandenBerg, for defendant-appellant Marlette Toomer.*

*Sharon L. Smith, for defendant-appellant Vernon Toomer.*

STROUD, Judge.

Defendant Vernon Toomer appeals from a judgment entered upon a jury verdict finding him guilty of felony larceny. Defendant Marlette Toomer appeals from judgments entered upon jury verdicts finding him guilty of two counts of felony larceny. [1] For the following reasons, we find no error.

## I.    Background

Because this case has both multiple defendants and multiple offenses, the background is quite the Gordian knot to untangle. In late 2011, three thefts occurred at Belk department store at Alamance Crossing in Burlington. In all of these incidents, the suspects entered the store, went into the Polo section of the men's department, grabbed an armful of clothing, quickly ran out of the store, and departed in a car parked closely to the front door; all of these incidents were captured by surveillance video.

A.    Facts

---

[1] Both defendants also appeal their convictions for attaining habitual felon status.

On 1 September 2011, the first theft ("Theft 1") occurred. Surveillance video clearly showed two African-American men, whose faces are visible, take Polo clothing. The second theft ("Theft 2") occurred on 3 October 2011. The surveillance video is blurry but showed two African-American men, whose faces were largely obscured by hats, taking Polo clothing. Thereafter, on 18 October 2011, Megan Edwards' silver Mazda 3 was stolen from a gas station in Mebane. On 26 October 2011, the third theft ("Theft 3") occurred. The surveillance video is also blurry and the faces of the two people taking the Polo clothing are not clear; however, this time a man and a woman were involved. The African-American man was wearing blue jeans, a black hoodie, and shoes with white soles. The African-American woman was wearing a primarily white nurse's scrub top with dark pants. The man and woman ran out of the store with their armfuls of clothing and jumped into a waiting silver car. On 27 October 2011, the day after Theft 3 occurred, defendant Marlette and a woman, both of whom were wearing clothing consistent with the Theft 3 surveillance video, were found with Ms. Edwards' stolen silver Mazda 3 in Durham.

B.    Criminal Proceedings

The State indicted defendant Marlette for three counts of felony larceny and defendant Vernon for two counts of felony larceny. Thereafter, the trial court joined defendants' cases over their objection. The State chose not to prosecute Theft 3 against defendant Marlette and dismissed the Theft 2 charge against Vernon.

Ultimately, the State tried defendant Marlette for Thefts 1 and 2 and defendant Vernon for Theft 1.

1.      Joinder

The State moved for joinder of defendants' cases, which the trial court allowed. Both defendants moved to sever, but their motions were denied.  The trial court reasoned:

> Well, the Court finds that there's an outstanding similarity in the September 1, 2011, and the October 3, 2011.  Specifically, the same store was robbed, same manner of robbery, what's typically referred to as a smash and grab. Both cases they went to the Polo department. Men's clothing – men's sweaters were stolen. . . . Both men appear to be identified on the security cameras. There was a getaway car parked in the front of the store.
>
> The cases are strikingly similar and the Court is going to order the joinder of the offenses and the defendants for trial in this case, not only for purposes of judicial efficiency but, in addition, it shows a common scheme or plan; they're reasonably closely connected in time, place and location or exactly connected in terms of place, and motion to join is allowed.

At trial, the State did not proceed on Marlette's Theft 3 charge because of the joinder.  However, the State moved to introduce the Theft 3 evidence and the trial court determined in its written order, "[T]his 404(B) evidence [of Theft 3] is relevant to defendant Marlette Toomer in that it sufficiently establishes that the theft from Belk Inc. on October 26, 2011, was in fact committed by the defendant, but that the Theft 3 "evidence is not admissible against defendant Vernon[.]"  Both defendants

objected to the admission of the Theft 3 evidence.  Before the jury heard any of the

evidence related to Theft 3, the trial court gave the following limiting instruction:

> You are about to hear testimony which may tend to show that the defendant Marlette Toomer -- and Mr. Marlette Toomer is the young man at the far end of the table beside Mr. Sharpe, not Mr. Vernon Toomer who's seated at this end of the table -- but you are about to hear testimony which might tend to show that the defendant Marlette Toomer committed a subsequent larceny from Belk on October 26, 2011.
>
> This evidence is received solely for the limited purpose of identifying him as the person who committed the two crimes charged in this case, the September 1st and October 3rd crimes, as well as it may be considered by you to show that Mr. Marlette Toomer had the knowledge or that there existed in his mind a plan, scheme, or design involving the larcenies on September 1st and October 3rd if, in fact, they were committed, which you would have to find.  If you -- it would you be up to you to find that.
>
> If you believe this evidence, you may consider it but only for that limited purpose for which it was received. In other words, to show his identity or to show that he had knowledge or that there existed in his mind a plan, scheme, or design involving the September 1st and October 3rd larcenies.
>
> Additionally -- and this is important -- this evidence which you are about to receive regarding the events of October 26th and October 27th have absolutely nothing to do with Mr. Vernon Toomer and may not be considered by you as evidence in any way about his case. You must always keep [i]n mind that you are trying separate cases at the same time.
>
> And none of the evidence that you are going to hear involving October 26th and October 27th involve Mr. Vernon Toomer and may not be considered by you when you consider whether or not he is guilty of the September 1st and October 3rd larcenies.

2.    Witness Testimony Identifying Defendants

Also at trial, the State introduced testimony from three witnesses who neither knew defendant Marlette or defendant Vernon previously nor saw the theft suspects in person. The first witness, Mr. Duran Bailey, a loss prevention associate at Belk, testified that he was working during Theft 1 and watched the incident as it occurred through an in-store surveillance camera. Mr. Bailey narrated the surveillance video and identified the suspects by their appearance in the video as the same defendants sitting in the courtroom. Defendant Marlette objected, but was overruled, while defendant Vernon failed to object.

The second witness, Mr. Darius Sellars, was called to Belk after Theft 2 occurred and watched the surveillance video. At trial, Mr. Sellars narrated the video and then identified both defendants by name as the Theft 2 suspects. Defendant Marlette objected, and the trial court sustained the objection and instructed the jury to strike the testimony at issue. The jury was subsequently instructed that Mr. Sellars made his identification by comparing the physical similarities between the suspects in the Theft 2 video and defendants in the courtroom and that they were not to consider him identifying the defendants by name; neither defendant objected to these instructions.

The third witness, Detective Kevin King of the Burlington Police Department, is the only witness at issue who testified about Theft 3 under the trial court's limiting instructions. After reviewing the videos from all three thefts as part of his

investigation, Detective King concluded that defendant Marlette was a perpetrator in all three thefts and defendant Vernon was a perpetrator in Thefts 1 and 2. Defendant Marlette objected, and was overruled, while defendant Vernon did not object.

C.      Outcome

The jury found defendant Vernon guilty of felony larceny for Theft 1, and the trial court entered judgment. The jury found defendant Marlette guilty of two counts of felony larceny for Theft 1 and Theft 2, and the trial court entered judgments. Both defendants appeal.

## II.      Defendant Vernon

Although both defendants raise similar issues on appeal, we will separately review their cases and individual arguments. *See generally State v. Wilson*, 108 N.C. App. 575, 581, 424 S.E.2d 454, 457 (1993) (considering co-defendants' cases individually), *disc. review denied and appeal dismissed*, 333 N.C. 541, 429 S.E.2d 562 (1993). We first consider defendant Vernon's appeal.

A.      Joinder

Defendant Vernon first contends that the trial court erred in joining the defendants for trial, arguing that "joinder of the defendants deprived . . . [him] of a fair trial where the trial court admitted highly prejudicial [Theft 3] evidence against Marlette Toomer that was not admissible against" him.  (Original in all caps.)

Joinder decisions are in the sound discretion of the trial court. According to our General Statutes, charges against two or more defendants may be joined for trial if the charges 1) are part of a common scheme or plan, 2) are part of the same act or transaction, or 3) are closely connected in time, place, and occasion. In fact, public policy strongly compels consolidation as the rule rather than the exception when each defendant is sought to be held accountable for the same crime or crimes. Thus, the test we apply on review is whether the offenses are so separate in time and place and so distinct in circumstances as to render consolidation unjust and prejudicial to the defendant.

*State v. Pittman*, 219 N.C. App. 512, 515, 725 S.E.2d 25, 27 (citations and quotation marks omitted), *disc. review denied*, 366 N.C. 223, 726 S.E.2d 832 (2012).

In *State v. Ellison*, this Court determined:

It is not uncommon where two defendants are joined for trial that some evidence will be admitted which is not admissible as against both defendants, leading our Courts to recognize that limiting instructions ordinarily eliminate any risk that the jury might have considered evidence competent against one defendant as evidence against the other. As a result, the presentation of evidence admissible to prove the guilt of only one of multiple defendants whose guilt is being considered in the context of a joint trial will not, without more, render the joinder of multiple defendants for trial inappropriate.

If we were to agree with the defendant that the introduction of evidence admissible against only one of the defendants joined for trial required a severance of the defendants' trials, we would in effect be ruling that co-defendants may not be joined for trial in this state. It would be unusual for all evidence at a joint trial to be admissible against both defendants, and we often rely on the common

- 8 -

> sense of the jury, aided by appropriate instructions of the trial judge, not to convict one defendant on the basis of evidence which relates only to the other.

213 N.C. App. 300, 313, 713 S.E.2d 228, 237-38 (2011) (citations, quotation marks, and brackets omitted), *aff'd*, 366 N.C. 439, 738 S.E.2d 161 (2013). Here, the trial court gave an appropriate limiting instruction regarding the evidence that was only applicable to defendant Marlette. We conclude that the trial court did not abuse its discretion in joining the cases as the joinder was neither "unjust [nor] prejudicial[,]" particularly in light of the fact that the State ultimately only submitted Theft 1 as the charge to the jury and the evidence for Theft 1 included video of the perpetrators' faces. *See Pittman*, 219 N.C. App. at 515, 725 S.E.2d at 27. This argument is overruled.

B.     Admission of Witness Testimony

Defendant Vernon next contends that "the trial court committed reversible error in allowing the State's witnesses to offer opinion testimony identifying . . . [him] from the surveillance tape where the witnesses were not in a better position than the jurors to draw conclusions from the evidence." (Original in all caps.) Defendant Vernon further contends that this was prejudicial because the State's case against him "rested entirely on identifying him from the . . . [Theft 1] videotape and still photographs."

Defendant directs our attention to three witnesses, Mr. Bailey, Mr. Sellars, and Detective King; as to all three witnesses, defendant failed to object on this issue. Defendant directs our attention to defendant Marlette's objections, but defendant Vernon failed to make an objection. We therefore address this issue under plain error analysis, *see State v. Harding*, 110 N.C. App. 155, 161, 429 S.E.2d 416, 420 (1993) ("Due to defendant's failure to object at trial, we must review this objection under the plain error rule."), which defendant also raised in his brief:

> For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty.

*State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citations and quotation marks omitted). Since the jury was able to view the Theft 1 video, which clearly shows the faces of two men taking Polo clothing, we do not conclude that any error in allowing witness opinion testimony "had a probable impact on the jury's finding that the defendant was guilty." *Id.* This argument is overruled.

## III.    Defendant Marlette

We next address defendant Marlette's appeal.

A.    Admission of Witness Testimony

Defendant Marlette, like defendant Vernon, contends that

the trial court committed error, or in the alternative plain

error, in admitting testimony of three witnesses who gave opinions that . . . [he] was one of the men in the Belk surveillance videotapes, where these witnesses were in no better position than the jurors to draw a conclusion on identity.

(Original in all caps.)

We first consider Mr. Bailey's testimony:

Q      (By Mr. Soderberg [State's Attorney]) Mr. Bailey, do you recognize the two individuals in that video as being in this courtroom here today?

A      Yes, sir.

Q      And can you point them out to the jury?

A      Yes, sir.

Q      And where are they at? Describe some clothing that they're wearing?

A      Got on white shirts. One had on white shirt and black pants. The other one have on white shirt and khaki looking pants.

Q      From those videos and those photographs, who do you recognize who to be?

A      The guy with the light blue shirt on with the Nike hat is with the white shirt and black pants. And the guy with the black striped shirt -- white striped shirt is sitting right to your right.

THE COURT:      For the record, the defendant Marlette Toomer is wearing black pants today with a white shirt and the defendant Vernon Toomer is wearing a white shirt with light khaki colored pants. Is that a fair statement, sir?

THE WITNESS: Yes, sir.

MR. SHARPE: I would respectfully object and just say that he doesn't have any better knowledge than anyone else of this identification.

MR. SODERBERG: Object to the argumentative, Your Honor.

THE COURT: Sustained as to the argumentative. It's already in testimony. Overruled.

In *State v. McCray*, the Supreme Court stated:

It is well established that error may not be predicated upon a ruling which admits evidence unless a timely objection or motion to strike appears of record. Where the defendant seeks to challenge an in-court identification, a motion to strike an incompetent answer must be made when the answer is given. A motion to strike will therefore be deemed untimely if the witness answers the question and the opposing party does not move to strike the response until after further questions are asked of the witness.

342 N.C. 123, 127, 463 S.E.2d 176, 179 (1995) (citations, quotation marks, ellipses, and brackets omitted). Due to defendant's untimely objection to the State's question and total failure to move to strike Mr. Bailey's testimony until after he had twice identified defendants, we conclude that the objection was not preserved for appeal, and we can review only for plain error. *See generally Harding*, 110 N.C. App. at 161, 429 S.E.2d at 420.

As to Mr. Sellars, we have already noted that after defendant Marlette's objection the trial court provided a curative instruction regarding the scope of Mr. Sellars's testimony. Defendant Marlette did not object after those instructions were provided. Defendant Marlette now contends that his counsel at trial likely considered the objection sufficiently preserved by prior objections or believed further objections to be futile, likening the situation at trial to *State v. Mills*, where the defendant failed to object to each and every piece of evidence regarding "prior bad acts[,]" and this Court stated, "We find that the pattern of objections constitutes a continuing objection to the line of questioning with respect to bad acts." *See State v. Mills*, 83 N.C. App. 606, 612, 351 S.E.2d 130, 134 (1986). But here, immediately after providing the curative instruction the trial court immediately asked, "Anything else, Mr. Sharpe [defendant Marlette's attorney]?" to which defendant responded, "No, Your Honor. Thank you." As defendant Marlette not only failed to object to the instructions, but affirmatively stated that he had no further objections, we view Mr. Sellars's testimony at issue only for plain error. *See generally Harding*, 110 N.C. App. at 161, 429 S.E.2d at 420.

Lastly, we turn to Detective King. While defendant Marlette did object to Detective King's testimony, he did not specifically do so. While a specific objection may not be required if the reason for the objection is clear, we do not believe defendant's general objections here was clear. *See State v. Catoe*, 78 N.C. App 167,

168, 336 S.E.2d 691, 692 (1985) ("Defendant's objections to the contested testimony were only general. Error may not be argued on appeal where the underlying objection fails to present the nature of the alleged error to the trial court."), *disc. review denied*, 316 N.C. 380, 344 S.E.2d 1 (1986). Throughout the trial, defendant Marlette objected to the Theft 3 evidence and Detective King testified regarding much of this evidence. Defendant Marlette did not specifically state he was objecting to an in-court identification made by Detective King, and thus the trial court may have been under the impression defendant was objecting to the Theft 3 evidence as a whole or for some other reason. Indeed, when defendant Marlette untimely objected to Mr. Bailey's in-court identification the trial court addressed the objection as untimely, and when defendant Marlette objected to Mr. Sellars's testimony the trial court sustained the objection and provided a curative instruction. If the trial court understood the objection to be regarding the in-court identification, rather than regarding the Theft 3 evidence which it had previously ruled on, it likely would have addressed the issue just as in the prior two instances. Defendant Marlette's objection was not sufficient for review, and accordingly, here too, we review only for plain error. *See generally Harding*, 110 N.C. App. at 161, 429 S.E.2d at 420.

Again,

> [f]or error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire

record, the error had a probable impact on the jury's finding that the defendant was guilty.

*Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334.  Due to the clear videotape of Theft 1, the blurry videotape of Theft 2, and the Theft 3 evidence wherein defendant Marlette was caught by the police in clothes the same or quite similar to those in the Theft 3 videotape, we believe a common plan of thefts from Belk was demonstrated, and due to this and other evidence any in-court identification did not have a "probable impact" on the jury's finding of guilt as to Theft 1 and Theft 2.  *Id.*  This argument is overruled.

B.    Joinder

Lastly, defendant Marlette contends, as did defendant Vernon that "the trial court erred in joining defendants . . . for trial, and denying motions to sever, as joinder impeded a fair determination of innocence or guilt." (Original in all caps.)  Defendant Marlette argues that joinder "allowed the jury to consider the two men as one unit and to conflate the evidence against one with the evidence against the other[.]"  Again, "[j]oinder decisions are in the sound discretion of the trial court."  *Pittman*, 219 N.C. App. at 515, 725 S.E.2d at 27 (2012).

Once more we note that the trial court correctly instructed the jury that they were considering two different defendants and conducting two completely separate trials, and that they must keep evidence against the respective defendants separate in their minds.  Furthermore, defendant Marlette has failed to direct us to a single

piece of evidence that was admissible against defendant Vernon that was not admissible against him. While defendant contends the Theft 1 videotape shows defendant Vernon's face clearly, and not his, even if this were true, the fact remains that the evidence was still admissible against him as he bore similarities to the man with defendant Vernon in the Theft 1 videotape. Therefore, we conclude that the trial court did not abuse its discretion in joining defendants' cases for trial.

IV.    Conclusion

For the foregoing reasons, we conclude that the trial court committed no error.

NO ERROR.

Judges CALABRIA and TYSON concur.

Report per Rule 30(e).