*440 NEWBY, Justice.
This case presents the question whether N.C.G.S. § 90-95(h)(4) of the North Carolina Controlled Substances Act, N.C.G.S. §§ 90-86 to -113.8 (2011), applies in cases involving prescription pharmaceutical tablets and pills. Subdivision 90-95(h)(4), the opium trafficking statute, explicitly provides that a defendant’s criminal liability shall be based on the total weight of the mixture involved. Because tablets and pills are mixtures, we conclude that defendants were properly sentenced under the opium trafficking statute. Accordingly, the decision of the Court of Appeals is affirmed.
The Ashe County Sheriff’s Office received a tip from a confidential informant regarding an ongoing arrangement between defendants, Lee Roy Ellison and James Edward Treadway, to trade in prescription drugs. After a brief period of surveillance, officers stopped Ellison leaving Treadway’s home with pill bottles from which the labels had been removed. The bottles appeared to contain prescription pharmaceuticals.
Later analysis revealed that the bottles held 90 pills of dihydrocodeinone, an opium derivative, and 80 pills of alprazolam. The dihydrocodeinone pills weighed a total of 75.3 grams. Using the aggregate weight of the dihydrocodeinone pills, the State charged defendants with a number of violations of the Controlled Substances Act, including trafficking in 28 grams or more of a mixture containing opium.
Defendants moved to dismiss the trafficking charges. They argued that the General Assembly did not intend that charges stemming from possession of prescription medications be based on total weight. The trial court denied defendants’ motions, and the jury found defendants guilty of trafficking in 28 grams or more of a mixture containing opium. In accordance with the opium trafficking statute, the court sentenced each defendant to 225 to 279 months of imprisonment plus a $500,000 fine. Defendants appealed, arguing, inter alia, that the trial court erred by denying their motions to dismiss the trafficking charges. State v. Ellison, — N.C. App. —, —, 713 S.E.2d 228, 241 (2011).
Relying on its own decisions in State v. McCracken, 157 N.C. App. 524, 579 S.E.2d 492 (2003) and State v. Jones, 85 N.C. App. 56, 354 S.E.2d 251, disc. rev. denied, 320 N.C. 173, 358 S.E.2d 61, cert. denied, 484 U.S. 969, 108 S. Ct. 465, 98 L. Ed. 2d 404 (1987), the Court of Appeals unanimously affirmed the trial court’s decision. Ellison, — N.C. App. —, —, 713 S.E.2d 228, 236, 246. That court held that under the Controlled Substances Act, “liability for trafficking cases *441 involving prescription medications hinges upon the total weight of the pills or tablets in question instead of the weight of the controlled substance contained within those medications.” Id. at —, 713 S.E.2d at 236 (citing McCracken, 157 N.C. App. 524, 579 S.E.2d 492). The court explained that “the ultimate responsibility for determining the manner in which criminal offenses should be punished lies with the General Assembly,” and further concluded that a rational basis exists “for subjecting individuals involved in large scale distribution of mixtures containing controlled substances to more severe punishment.” Id. at —, 713 S.E.2d at 237 (citing, inter alia, State v. Perry, 316 N.C. 87, 101-02, 340 S.E.2d 450, 459 (1986)). We allowed defendants’ petitions for discretionary review, State v. Ellison, — N.C. —, 722 S.E.2d 593 (2012); id. at —, 722 S.E.2d at 594 (2012), to determine whether the total weight of pills and tablets should be used to calculate liability under the trafficking provisions of the Controlled Substances Act.
In 1980 the General Assembly amended the Controlled Substances Act by adding a provision to further deter the distribution and use of opium derivatives. Act of June 25, 1980, ch. 1251, sec. 6, 7, 1979 N.C. Sess. Laws (2d Sess. 1980) 173, 174-78. Now codified at N.C.G.S. § 90-95(h)(4), the opium trafficking statute reads:
Any person who sells, manufactures, delivers, transports, or possesses four grams or more of opium or opiate, or any salt, compound, derivative, or preparation of opium or opiate (except apomorphine, nalbuphine, analoxone and naltrexone and their respective salts), including heroin, or any mixture containing such substance, shall be guilty of a felony which felony shall be known as “trafficking in opium or heroin” and if the quantity of such controlled substance or mixture involved:
a. Is four grams or more, but less than 14 grams, such person shall be punished as a Class F felon and shall be sentenced to a minimum term of 70 months and a maximum term of 84 months in the State’s prison and shall be fined not less than fifty thousand dollars ($50,000);
b. Is 14 grams or more, but less than 28 grams, such person shall be punished as a Class E felon and shall be sentenced to a minimum term of 90 months and a maximum term of 117 months in the State’s prison and shall be fined not less than one hundred thousand dollars ($100,000);
*442 c. Is 28 grams or more, such person shall be punished as a Class C felon and shall be sentenced to a minimum term of 225 months and a maximum term of 279 months in the State’s prison and shall be fined not less than five hundred thousand dollars ($500,000).
Under this statute a person will be punished at the maximum level “if the quantity of such controlled substance or mixture involved ... [i]s 28 grams or more.”
While “mixture” is not defined by the Controlled Substances Act, other courts have defined the term. In a case involving criminal prosecution under federal controlled substances laws, the Supreme Court of the United States said that “[a] ‘mixture’ is defined to include ‘a portion of matter consisting of two or more components that do not bear a fixed proportion to one another and that however thoroughly commingled are regarded as retaining a separate existence.’ ” Chapman v. United States, 500 U.S. 453, 462, 111 S. Ct. 1919, 1926, 114 L. Ed. 2d 524, 536 (1991) (quoting Webster’s Third New International Dictionary 1449 (1986)). Applying a similar definition in McCracken, our Court of Appeals reasoned that tablets, pills, and capsules are mixtures because they “contain commingled substances that are identifiable and thus regarded as retaining their separate existence.” 157 N.C. App. at 527, 579 S.E.2d at 495 (applying the opium trafficking statute in a case involving tablets containing opium derivatives (citing, inter alia, Jones, 85 N.C. App. at 68, 354 S.E.2d at 258)). Likewise, in Jones, a case involving tablets containing opium derivatives where charges were brought under the opium trafficking statute, the Court of Appeals held that “[c]learly, the legislature’s use of the word ‘mixture’ establishes that the total weight of the dosage units ... is sufficient basis to charge a suspect with trafficking.” 85 N.C. App. at 68, 354 S.E.2d at 258. Consequently, the pills at the heart of this case are, by definition, a “mixture” as contemplated by the opium trafficking statute.
Defendants nevertheless argue that the General Assembly intended for the opium trafficking statute to apply only to large-scale drug distribution operations, not cases involving “amounts typical of individual users.” According to defendants, if the pills’ total weight is determinative, then the weekly dosage recommended by physicians would trigger the highest level of punishment under the statute. Defendants thus contend that the sentences required by the plain language of the opium trafficking statute are absurd and unjust and not in accord with the statute’s purpose. Defendants instead point *443 to a different provision of the Controlled Substances Act, N.C.G.S. § 90-95(d)(2), and assert that the rule of lenity requires courts to apply that statute in cases involving pills and tablets. Rather than total weight, subdivision 90-95(d)(2) calculates criminal liability based on the number of “tablets, capsules, or other dosage units” involved and apparently would have carried a lesser sentence in this case.
“It is well settled that the General Assembly and not the judiciary determines the minimum and maximum punishment which may be. imposed on those convicted of crimes.” Perry, 316 N.C. at 101, 340 S.E.2d at 459. When reviewing criminal sentencing, we seek to apply the law consistently with the intent of the General Assembly. And, the legislature’s “actual words,” codified in our General Statutes, “are the clearest manifestation of its intent.” N.C. Dep’t of Corr. v. N.C. Med. Bd., 363 N.C. 189, 201, 675 S.E.2d 641, 649 (2009) (citation omitted). Judicial construction, like the rule of lenity, only applies when a statute is ambiguous. Lee v. Gore, 365 N.C. 227, 230, 717 S.E.2d 356, 358 (2011) (stating that “there is no room for judicial construction” when the “language of a statute is clear and unambiguous”); State v. Hinton, 361 N.C. 207, 211, 639 S.E.2d 437, 440 (2007) (applying the rule of lenity to an ambiguous criminal statute).
Because the opium trafficking statute is clear and unambiguous, we are required to apply the statute’s plain language that prohibits trafficking in mixtures containing opium derivatives, such as the pills in this case. Even if we did consider other evidence of legislative intent, it appears the result would be the same. The statute defendants would have us apply instead, N.C.G.S. § 90-95(d)(2), explicitly states that it is subject to subsection (h), which includes the opium trafficking provisions in section 90-95. So the General Assembly plainly intended for the opium trafficking statute, not subdivision 90-95(d)(2), to control in cases involving “four grams or more” of a mixture containing opium derivatives. Moreover, in 2009, well after our Court of Appeals addressed this issue in McCracken and Jones, the General Assembly considered legislation that would have amended the opium trafficking statute so that criminal liability would be based on the number of prescription pills involved rather than total weight. H. 1307, 149th Gen. Assemb., Reg. Sess. (N.C. 2009) (“An Act To Clarify That Possession of Certain Prescription Drugs Is Not Punishable As Trafficking in Opium or Heroin and To Set Out the Criminal Penalty for That Offense”). The General Assembly, however, declined to make that change. Act of July 1, 2010, ch. 49, 2009 N.C. Sess. Laws (Reg. Sess. 2010) 255 (amending the state constitution on *444 an unrelated matter). While not dispositive, the General Assembly’s consideration of the issue and decision not to amend the statute are at least some evidence of tacit approval for applying the statute to tablets and pills. See, e.g., State v. Jones, 358 N.C. 473, 483-84, 598 S.E.2d 125, 131-32 (2004) (applying the concept of legislative acquiescence to the judicial interpretation of a criminal statute (citing State v. Gardner, 315 N.C. 444, 462, 340 S.E.2d 701, 713 (1986); State v. Council, 129 N.C. 511, 513, 39 S.E. 814, 815 (1901))); Young v. Woodall, 343 N.C. 459, 462-63, 471 S.E.2d 357, 359 (1996) (“The failure of a legislature to amend a statute which has been interpreted by a court is some evidence that the legislature approves of the court’s interpretation.”).
Thus, we hold that the opium trafficking statute applies in cases involving tablets and pills of prescription pharmaceutical drugs. Because defendants possessed more than 28 grams of a mixture containing an opium derivative, the trial court correctly sentenced defendants under the opium trafficking statute. Though we are not unmindful of the harsh results imposed by the statute, to conclude otherwise would encroach upon the role of the legislative branch. N.C. Const, art. I, § 6. Had the General Assembly intended for prescription tablets and pills to fall outside the scope of the statute, it could have easily included plain language to that effect. Defendants’ argument therefore would be better addressed to the legislature, Evan M. Musselwhite, Comment, One Tough Pill To Swallow: A Call To Revise North Carolina’s Drug Trafficking Laws Concerning Prescription Painkillers, 33 Campbell L. Rev. 451 (2011), or in a petition to the Governor for clemency, N.C. Const, art. Ill, § 5, cl. 6. Accordingly, we affirm the decision of the Court of Appeals.
AFFIRMED.
Justice BEASLEY did not participate in the consideration or decision of this case.