Justice NEWBY
dissenting in part and concurring in part.
“It is not debatable that the Workmen’s Compensation Act is to be liberally construed to the end that the benefits thereof should not be denied upon technical, narrow and strict interpretation. The rule of liberal construction cannot be used to read into the Act a meaning *129 alien to its plain and unmistakable words. We should not overstep the bounds of legislative intent, and make by judicial legislation our Workmen’s Compensation Act an Accident and Health Insurance Act.” Hatchett v. Hitchcock Corp., 240 N.C. 591, 593, 83 S.E.2d 539, 541 (1954) (citations and internal quotation marks omitted). Through “judicial legislation” the majority has done just that, expanding the potential liability owed by employers across our state. In so doing, the majority strikes down a reasonable attempt by the Industrial Commission to regulate costs that has existed for almost eighty years. The majority opinion circumvents the doctrine of stare decisis by “overstep[ping] the bounds of legislative intent,” effectively overruling Hatchett v. Hitchcock Corporation. Id. Consequently, I must respectfully dissent in part.
According to the majority, an injured employee is entitled to compensation for unauthorized health care furnished by a family member despite a provision of the Industrial Commission’s Medical Fee Schedule that explicitly requires preapproval. Mehaffey v. Burger King,_N.C._, __,_S.E.2d_, __(2013). The preapproval requirement is a long-established regulation designed to ensure predictability and to control medical costs while balancing employee access to care. Even so, the majority concludes that by the 1994 revisions to the Workers’ Compensation Act, the General Assembly intended to remove the Commission’s power to promulgate this historic prerequisite. Id. at_,_S.E.2d at_. Specifically, the majority relies on the elimination of the phrase “when ordered by the Commission” from section 97-26. That statute now states that the Medical Fee Schedule “shall be adequate to ensure that (i) injured workers are provided the standard of services and care intended by this Chapter, (ii) providers are reimbursed reasonable fees for providing these services, and (iii) medical costs are adequately contained.” N.C.G.S. § 97-26(a) (2011). The 1994 revisions further instructed the Commission to adopt “rules and guidelines” for the provision of “attendant care.” Id. § 97-25.4(a) (2011). Those “rules and guidelines shall ensure that injured employees are provided the services and care intended by this Article and that medical costs are adequately contained.” Id. Notwithstanding this explicit mandate to control costs, the majority holds that the 1994 revisions evidence a clear legislative intent to strip the authority of the Industrial Commission to require preapproval for familial care. Mehaffey,_N.C. at_, _S.E.2d_. I disagree.
As an administrative agency, the Commission “possesses only those powers expressly granted to it by our legislature or those which *130 exist by necessary implication in a statutory grant of authority.” High Rock Lake Partners, LLC v. N.C. DOT, 366 N.C. 315, 319, 735 S.E.2d 300, 303 (2012) (citation and quotation marks omitted). To determine the extent of an agency’s power, “we apply the enabling legislation practically so that the agency’s powers include all those the General Assembly intended the agency to exercise,” and “[w]e give great weight to an agency’s interpretation of a statute it is charged with administering.” Id. (citations omitted). When reading such statutes, we also must consider legislative acquiescence; in other words, “ [t]he failure of a legislature to amend a statute which has been interpreted by a court is some evidence that the legislature approves of the court’s interpretation.” Young v. Woodall, 343 N.C. 459, 462-63, 471 S.E.2d 357, 359 (1996); see also State v. Ellison,_N.C._,_, 738 S.E.2d 161, 164 (2013) (approving of legislative acquiescence (citations omitted)).
To ascertain the bounds of the Commission’s authority, it is imperative to look at both the agency’s enabling legislation as well as the long-standing interpretation it has given to those statutes. The Workers’ Compensation Act generally provides health care for employees who sustain workplace injuries. N.C.G.S. §§ 97-1 to -101.1 (2011). Ratified in 1929, the Act sought to respond to the “ordinary hazards” implicit in “the substitution of the factory for the home as a place of labor and the introduction of power driven machinery with its vast complex of dangerous operations.” N.C. Indus. Comm’n, The North Carolina Workmen’s Compensation Act, Bull., May 1929, at 5-6 [hereinafter Bulletin]. Under the Act, an employee’s right to compensation and an employer’s resulting liability are predicated on “mutual concessions,” in which “each surrenders rights and waives remedies” otherwise available under the law. Lee v. Am. Enka Corp., 212 N.C. 455, 462, 193 S.E. 809, 812 (1937). The Act ensures that employees receive “prompt, reasonable compensation,” but guarantees “limited and determinate liability for employers.” Radzisz v. Harley Davidson of Metrolina, Inc., 346 N.C. 84, 89, 484 S.E.2d 566, 569 (1997) (citations omitted).
When an employee seeks treatment from a professional health care provider, the Workers’ Compensation Act applies in its simplest form. The care furnished comes at a cost, and the provider expects payment for the services rendered. A much more challenging situation occurs when the care is provided by an injured employee’s immediate family. Unlike a professional health care provider, a family member does not create a bill or medical records as part of an ongoing busi *131 ness and is usually expected to furnish a degree of uncompensated care. At some point, however, that care reaches a threshold, surpassing that which is expected of normal familial duties. But by its very nature, health care furnished by family members is difficult, if not impossible, to monitor and always invites the questions: When do the services cross the line from being merely part of the duties of a family to becoming compensable medical care? And who decides? This intersection tests the delicate balance between access to care and predictable medical costs, the foundation of the Workers’ Compensation Act.
Early in its existence, the Industrial Commission, the state agency charged with administering the Workers’ Compensation Act, enacted a series of safeguards designed to protect the financial well-being of those who must care for their loved ones following a workplace accident. These safeguards likewise ensured that employers are not wrongfully burdened with paying for care that is implicitly part of the responsibilities of a family or, worse, fraudulent. As the majority concedes, these procedural protections have “remained largely unchanged,” Mehaffey,_N.C. at_,__S.E.2d at_, and consistent over the better part of the last century.
In the Act’s infancy, the Fee Schedule was quite vague on this issue. For example, in 1931 the Fee Schedule made no distinction for familial care, merely stating that “[cjharges for special nursing will be approved in those cases only where, and for such time as, the patient’s condition actually requires such attention.” Bulletin, Sept. 1931, at 9 (Medical and Hospital Fee Schedule). Shortly thereafter, the Commission began including language that reflected the difficulty in managing care furnished by an employee’s immediate family. The first iterations of the preapproval requirement were not limited to family members alone, but included “any one” who acted as a practical nurse. In 1936, for instance, the Fee Schedule provided that “[flees for practical nursing service by a member of claimant’s family or any one else will not be honored unless written authority has been obtained in advance.” N.C. Indus. Comm’n, Medical and Hospital Fee Schedule 10 (1936).
The language of the 1945 Fee Schedule, at issue in Hatchett, was nearly identical, stating that “[flees for practical nursing service by a member of claimant’s family or any one else will not be honored unless written authority has been obtained in advance.” N.C. Indus. Comm’n, Medical, Dental, Nursing and Hospital Fees 15 (1945). Nonetheless, in Hatchett the Commission chose to ignore its own Fee *132 Schedule and awarded financial compensation to an injured worker’s mother for attendant care services that she provided to her son without prior approval from the Commission. 240 N.C. at 592-93, 83 S.E.2d at 540-41. On appeal, the defendants argued that the Fee Schedule controlled, prohibiting retroactive payments for the plaintiff’s care. We agreed, striking down the award for lack of preapproval. Id. at 594-95, 83 S.E.2d at 542-43. This Court determined that the Fee Schedule, promulgated pursuant to the Commission’s authority under the Workers’ Compensation Act, prohibited such an award of compensation for a family member providing attendant care services unless that conduct had been first approved by the Commission. Id. at 593-94, 83 S.E.2d at 541-42.
As the Fee Schedule was tested by different and unique fact patterns related to familial care, the Commission continued to fine-tune the provision’s language. By 1958 the Commission omitted “any one” and introduced a degree of flexibility by adding the word “ordinarily.” At that time the Fee Schedule required that “[flees for practical nursing service by a member of the immediate family of the injured person will not ordinarily be approved unless written authority for the rendition of such services for pay is first obtained from the Industrial Commission.” N.C. Indus. Comm’n, Medical, Dental, Nursing, and Hospital Fees 28 (1958).
Following the legislature’s 1994 revision of the Workers’ Compensation Act that directed the Commission to adopt a Medical Fee Schedule that balances costs with access to care, the Commission again turned to the existing preapproval requirement, now section 14 of the Medical Fee Schedule. As it has for almost eighty years, that rule seeks to foster predictability and reduce the costs associated with home health care, stating that:
When deemed urgent and necessary by the attending physician, special duty nurses may be employed. Such necessity must be stated in writing when more than seven days of nursing services are required.
Except in unusual cases where the treating physician certifies it is required, fees for practical nursing services by members of the immediate family of the injured will not be approved unless written authority for the rendition of such services for pay is first obtained from the Industrial Commission.
*133 N.C. Indus. Comm’n, Medical Fee Schedule: Section 14 (2012). Therefore, according to the Commission’s own terms, for a family member to receive payment for providing attendant care, the services generally must be preapproved in writing by the Commission. Yet, in keeping with the Workers’ Compensation Act’s mandate to ensure reasonable access to care, an injured employee may bypass Commission preapproval in unusual cases by first obtaining certification from the treating physician that the care provided by family members is required and then procuring the Commission’s approval within a reasonable time, see Mehaffey,_ N.C. at_,_S.E.2d at_(“As plaintiff concedes, to receive compensation for medical services, an injured worker is required to obtain approval from the Commission within a reasonable time after he selects a medical provider.” (citation omitted)). In either situation, however, the Fee Schedule fulfills the statutory directive of controlling costs and promoting predictability while leaving employees reasonable access to necessary care.
Like the Fee Schedule itself, the statutes undergirding the preapproval requirement have seen little change in the years since we decided Hatchett. For example, N.C.G.S. § 97-25, the statute upon which both the claims in this case and those in Hatchett are founded, generally reads the same, stating that compensation “shall be provided by the employer.” Compare N.C.G.S. § 97-25 (1950), with id. § 97-25 (2007). Further, when we decided Hatchett the relevant subsection of N.C.G.S. § 97-90 was nearly identical to its current version, reading that “no physician shall be entitled to collect fees from an employer or insurance carrier until he has made the reports required by the Industrial Commission in connection with the case.” Id. § 97-90(a) (1950). That same statute now provides in part that “no physician or hospital or other medical facilities shall be entitled to collect fees from an employer or insurance carrier until he has made the reports required by the Commission in connection with the case.” Id. § 97-90(a) (2011). Moreover, the Commission’s rule making authority under N.C.G.S. § 97-80 has likewise withstood the test of time, requiring the agency to adopt rules consistent with the Workers’ Compensation Act. Compare id. § 97-80(a) (2011) (“The Commission shall adopt rules, in accordance with Article 2A of Chapter 150B of the General Statutes and not inconsistent with this Article, for carrying out the provisions of this Article.”), with id. § 97-80 (1950) (“The Commis-sion may make rules, not inconsistent with this article, for carrying out the provisions of this article.”). Consequently, the doctrine of stare decisis directs that our reasoning in Hatchett and our application of the Commission’s Fee Schedule in that case control here.
*134 Yet, attempting to distinguish Hatchett from the case at hand, the majority seizes upon the revision to N.C.G.S. § 97-26 to nullify the preapproval requirement. This result apparently relies solely on the General Assembly’s later “removing” of the phrase “when ordered by the Commission,” which was part of the statute when we decided Hatchett. Mehaffey,_N.C. at_,_S.E.2d at_. Perhaps the majority’s analysis would be reasonable if we were faced with a surgical extraction of these five words only, but in reality the entire statute, along with many other provisions of the Workers’ Compensation Act, was revised in 1994. Though the language changed, the majority agrees that the statute’s purpose remained intact: to “control medical costs” and to “enable employers more accurately to predict their potential financial exposure following an employee’s injury.” Id. at_,_S.E.2d at_. After further emphasizing that “[t]he adoption of a Medical Fee Schedule aids in fulfilling a purpose of the Act by indicating to employers the amount of their potential financial exposure,” id. at_,_S.E.2d at_, why would the majority then strike down a specific provision that unequivocally was enacted with that purpose in mind?
The majority’s mischaracterization of this revision to N.C.G.S. § 97-26 as evidence of legislative intent unreasonably parses a statute that previously interposed a sensible balance between access to care and cost containment. Now, the majority has effectively removed the cost containment provision. Striking the preapproval requirement, a proven method of ensuring “uniformity and predictability,” Mehaffey, _N.C. at_,_S.E.2d at_, and guaranteeing that “medical costs are adequately contained,” N.C.G.S. § 97-26(a), did not result from actions by our General Assembly. And, this Court should not pass judgment on policy. See Home Sec. Life Ins. Co. v. McDonald, 277 N.C. 275, 285, 177 S.E.2d 291, 298 (1970) (concluding that “questions as to public policy are for legislative determination” (citation omitted)); State v. Barksdale, 181 N.C. 621, 626, 107 S.E. 505, 508 (1921) (“It is [the Court’s role] to construe the laws and not to make them.”).
Since first recognizing the challenge of managing home health care furnished by immediate family members, the Commission has interpreted the Workers’ Compensation Act to allow the agency to require preapproval for such services. Nevertheless, the majority affords no weight to the Commission’s interpretation — the Fee Schedule — which we approved in Hatchett and the General Assembly accepted for decades. If anything, the 1994 revisions to the Workers’ Compensation Act actually bolstered the Commission’s authority. An *135 examination of the current version of section 97-26 makes clear that the power to require preapproval of these services is well within a practical reading of the legislature’s mandate to adopt a Fee Schedule that ensures “(i) injured workers are provided the standard of services and care intended by this Chapter, (ii) providers are reimbursed reasonable fees for providing these services, and (iii) medical costs are adequately contained.” N.C.G.S. § 97-26(a). Moreover, the extent of the Commission’s authority is even more evident when considered in light of the long history of the preapproval requirement in conjunction with the plain and unambiguous language of section 97-25.4(a) instructing the Commission to adopt “rules and guidelines” for the provision of “attendant care” that “shall ensure that injured employees are provided the services and care intended by this Article and that medical costs are adequately contained.” Id. § 97-25.4(a).
As a result, I would hold that Section 14 of the Medical Fee Schedule is consistent with the current statutory scheme and that the Commission was thereby bound to apply it. Accordingly, for an employee to receive compensation for attendant care when provided by immediate family members, that employee must obtain either approval from the Commission before receiving treatment or, in unusual cases only, certification from the employee’s treating physician that the care provided is required.
In this instance, the parties agree that plaintiff failed to obtain preapproval from the Commission before receiving attendant care from his wife. Thus, under its own Fee Schedule, the Commission should have denied plaintiff’s reimbursement request unless this case presents an “unusual” situation and plaintiff’s treating physician certified that the care furnished was required. Based on my review of the record, however, I am unable to make such a determination. I cannot determine, for example, why the Commission chose to depart from its own general requirements, whether the Commission believed this to be an “unusual” case, if plaintiff’s treating physician certified plaintiff’s wife’s care was required, when such certification occurred, or if plaintiff sought Commission approval within a reasonable time. Most striking, the Commission’s opinion and award ignores Section 14 of the Fee Schedule altogether, neither mentioning it nor alluding to its application to this case. Therefore, I would remand this matter to the Commission for further proceedings to consider application of the Fee Schedule and the preapproval requirement.
The majority claims to “understand the difficulty in monitoring home health care, especially when furnished by a family member,” yet *136 removes the authority from the Commission to address this very real challenge. Mehaffey,_N.C. at_,_S.E.2d at__. In the name of construing a statute designed “to control medical costs,” id. at_, _ S.E.2d at_, the majority instead has increased significantly employers’ exposure to potential liability. Because the majority’s analysis runs afoul of one of the core aspirations of the Workers’ Compensation Act — predictability—and because I believe our reasoning in Hatchett remains controlling, I respectfully dissent in part.
I concur with the majority’s conclusion that “to receive compensation for medical services, an injured worker is required to obtain approval from the Commission within a reasonable time after he selects a medical provider.” Mehaffey,_N.C. at_,_S.E.2d at _(citation omitted).