IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-844

Filed: 21 April 2020

Cleveland County, No. 16 CRS 52591-93; 16 CRS 52598

STATE OF NORTH CAROLINA

v.

MICHAEL JIMMY COLEMAN

Appeal by defendant from judgment entered 22 April 2019 by Judge Carla Archie in Cleveland County Superior Court. Heard in the Court of Appeals 1 April 2020.

*Attorney General Joshua H. Stein, by Assistant Attorney General Nicholas R. Sanders, for the State.*

*Edward Eldred for defendant-appellant.*

TYSON, Judge.

Michael Jimmy Coleman ("Defendant") appeals from a judgment entered upon a jury's verdict finding him guilty of trafficking opium; possession with intent to manufacture, sell, and distribute a schedule-III-controlled substance; and to sell/deliver a schedule-III-controlled substance. We find no error.

I. Background

A confidential informant ("CI") worked with the Cleveland County Sherriff's Department Narcotics Division Sergeant Travis Hamrick ("Sgt. Hamrick") to identify

and provide names of illicit drug dealers located in Cleveland County from whom she could buy illegal narcotics. The CI informed Sgt. Hamrick that Defendant "was selling pills, hydrocodone and Xanax in particular."

The CI agreed to participate in a controlled buy of narcotics from Defendant on 1 February 2016. Sgt. Hamrick, along with Narcotics Division, Lieutenant Judy Seagle ("Lt. Seagle") met the CI in a supermarket's parking lot in Kings Mountain near Defendant's home.

Sgt. Hamrick and Lt. Seagle confirmed the CI did not have any narcotics on her person or in her vehicle. The CI was wired with a button camera underneath her shirt and given a cell phone to record audio. Sgt. Hamrick gave the CI $82.00 in U.S. currency to purchase the narcotics.

Sgt. Hamrick and Lt. Seagle followed the CI from the supermarket's parking lot to Defendant's home. The detectives parked at a neighboring home, while the CI went to Defendant's home. Once the CI was inside of Defendant's home, she told Defendant she needed to buy pills for her brother, who she claimed was waiting back at the nearby parking lot. Defendant sold the CI six Xanax tablets and five oxycodone tablets for $80.00.

After the CI left Defendant's home, the detectives followed her back to the same parking lot. The CI gave the six Xanax tablets, five oxycodone tablets, and $2.00 in change to the detectives. Sgt. Hamrick and Lt. Seagle again searched the CI's person

and vehicle to "make sure that she didn't keep anything." Laboratory testing later confirmed the tablets contained alprazolam (Xanax), a schedule-IV-controlled substance, and dihydrocodeinone, which is hydrocodone, a schedule-III-controlled substance.

The CI conducted two further buys from Defendant at his home. On 4 February 2016, the CI bought twenty hydrocodone tablets for $200.00. Laboratory tests confirmed the tablets contained hydrocodone and had a total weight of 8.47 grams. On 5 February 2016, the CI purchased an additional twenty hydrocodone tablets for $160.00. Laboratory testing confirmed the tablets contained hydrocodone and weighed 8.46 grams.

The State presented the testimony of Deborah Chancey, an analyst at the North Carolina State Crime Laboratory. Analyst Chancey selected and analyzed one tablet that contained dihydrocodeinone or hydrocodone. This tablet weighed ".42 grams, and the net weight of the remaining tablets was 8.05 grams plus or minus 0.03 grams."

Sgt. Hamrick and Lt. Seagle visited Defendant at his home on 24 February 2016 to discuss his potential cooperation with the Narcotics Division in their investigation of his narcotics supplier. During this visit, Defendant allowed the officers to search his home. Lt. Seagle located a pill bottle with Defendant's sister's name thereon, which contained a "mixture of pills." Sgt. Hamrick visually inspected

the pills and found "[s]ome of the pills that were in the bottle were consistent with what [Defendant] had sold" to the CI in the controlled purchases.

Defendant was indicted for possession with intent to manufacture, sell, deliver hydrocodone; selling and delivering hydrocodone, possession with intent to manufacture, sell, deliver alprazolam; and selling and delivering alprazolam for the 1 February 2016 transactions. Defendant was indicted for two counts of trafficking opium for the transactions on 4 February and 5 February 2016.

On 16 April 2019, the jury returned verdicts and convicted Defendant of all charges, except the trafficking in opium indictment for the 5 February 2016 transaction. Defendant was acquitted of that charge.

The trial court consolidated the convictions and sentenced Defendant to an active term of 70 to 93 months of imprisonment on 22 April 2019. The trial court prepared appellate entries on that same date.

## II. Jurisdiction

The record on appeal does not include any reference to Defendant entering an oral or written notice of appeal. The trial court's appellate entries are included. On 30 December 2019, Defendant petitioned this Court to issue a writ of certiorari to hear his belated appeal. Defendant also filed a motion to amend the record on appeal to offer proof of his written notice of appeal.

A writ of certiorari may be issued "when the right to prosecute an appeal has been lost by failure to take timely action." N.C. R. App. P. 21(a)(1). "*Certiorari* is a discretionary writ, to be issued only for good and sufficient cause shown." *State v. Grundler*, 251 N.C. 177, 189, 111 S.E.2d 1, 9 (1959) (citation omitted) (alteration original), *cert denied*, 362 U.S. 917, 4 L. Ed. 2d 738 (1960).

In an exercise of discretion, this Court grants Defendant's petition for writ of certiorari to hear his belated appeal. This Court possesses jurisdiction pursuant to N.C. Gen. Stat. § 15A-1444(g) (2019); N.C. R. App. P. 21(a)(1) ("The writ of certiorari may be issued in appropriate circumstances by either appellate court to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action[.]").

Our Supreme Court has held whether to grant or deny a motion to amend the record is "a decision within the discretion of the Court of Appeals" which constitutes a legitimate application of our appellate rules absent an "abuse of discretion." *State v. Petersilie,* 334 N.C. 169, 177, 432 S.E.2d 832, 837 (1993). The State argues the purported document is not an appropriate entry or statement showing an appeal taken orally. In support of this assertion, the State cites *State v. Hughes*, wherein this Court dismissed an appeal because the appealing party failed to comply with Rule 4 of our Rules of Appellate Procedure. This failure deprived this Court of jurisdiction to consider the appeal. *State v. Hughes*, 210 N.C. App. 482, 485, 707

S.E.2d 777, 778-79 (2011). However, the reasoning in *Hughes* is distinguishable from the facts of this case. In *Hughes*, the defendant did not petition this court for a writ of certiorari or to amend the record. *Id.* Contemporaneously filed with this motion to amend was Defendant's now-allowed petition for writ of certiorari. Having acquired jurisdiction, and in the exercise of our discretion, this Court allows Defendant's motion to amend the record to reflect his notice of appeal.

### III. Issue

Defendant argues the trial court committed plain error by not instructing the jury *ex mero motu* on the lesser-included offense of selling hydrocodone. Defendant acknowledges he did not request the lesser-included offense and review of this argument is limited to plain error.

### IV. Lesser-Included Instruction

#### A. Standard of Review

Under our Rules of Appellate Procedure: "In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C. R. App. P. 10(a)(4).

This Court's review under plain error is "applied cautiously and only in the exceptional case" where the error "seriously affect[s] the fairness, integrity, or public

reputation of judicial proceedings" to overcome dismissal for a defendant's failure to preserve. *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citation omitted). To constitute plain error, Defendant carries and maintains the burden to show "not only that there was error, but that absent the error, the jury probably would have reached a different result" to demonstrate prejudice. *State v. Jordan*, 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993).

## B. Analysis

Defendant argues the trial court plainly erred by not instructing the jury on the lesser-included offense of selling a controlled substance. Defendant asserts the State's evidence conflicted on the weight of the hydrocodone the CI had purchased from him during the 4 February 2016 transaction.

Our Supreme Court has held: "Where there is conflicting evidence as to an essential element of the crime charged, the court should instruct the jury with regard to any lesser included offense *supported by any version of the evidence*." *State v. Jones*, 304 N.C. 323, 331, 283 S.E.2d 483, 488 (1981) (emphasis original).

"[O]nly where there is evidence from which the jury reasonably could find that the defendant committed the lesser offense" is the trial court required to instruct the jury on a lesser included offense. *State v. Bagley*, 321 N.C. 201, 210, 362 S.E.2d 244, 249-50 (1987). "If the State's evidence is sufficient to fully satisfy its burden of proving each element of the greater offense and there is no evidence to negate those

elements other than the defendant's denial that he committed the offense, [the] defendant is not entitled to an instruction on the lesser offense." *State v. Smith*, 351 N.C. 251, 267-68, 524 S.E.2d 28, 40 (2000) (citation omitted).

To determine if the lesser-included offense instruction is necessary, the test is "whether the State's evidence is positive as to each element of the crime charged and whether there is any conflicting evidence relating to any of these elements." *State v. Chaves*, 246 N.C. App. 100, 103, 782 S.E.2d 540, 543 (2016) (internal citation and quotation marks omitted).

Our General Statutes provide a defendant is guilty of trafficking in opium or heroin when he "sells, manufactures, delivers, transports, or possesses four grams or more of opium or opiate, or any salt, compound, derivative, or preparation of opium or opiate . . . including heroin, or any mixture containing such substance." N.C. Gen. Stat. § 90-95(h)(4) (2019). "[T]he legislature's use of the word 'mixture' establishes that the total weight of the dosage units . . . is sufficient basis to charge a suspect with trafficking." *State v. Jones*, 85 N.C. App. 56, 68, 354 S.E.2d 251, 258 (1987). The two essential elements of trafficking in opium are a defendant must (1) knowingly sell (2) a specified amount of opium (or any preparation thereof). *State v. Hunt*, 249 N.C. App. 428, 432, 790 S.E.2d 874, 878 (2016).

Our Supreme Court has held "tablets and pills of prescription pharmaceutical drugs" are mixtures under N.C. Gen. Stat. § 90-95(h)(4). *State v. Ellison*, 366 N.C.

439, 444, 738 S.E.2d 161, 163-64 (2013). A defendant's criminal liability under N.C. Gen. Stat. § 90-95(h)(4) is "based on the total weight of the mixture involved." *Id.* at 440, 738 S.E.2d at 162. The total weight of the pills or tablets determines whether the amount possessed constitutes trafficking. *See id.*

Analyst Chancey testified the total weight of the twenty tablets from the 4 February purchase weighed 8.47 grams, plus or minus 0.03 grams. Defendant argues the CI's testimony that she had purchased "$200 worth of pain pills, 20 of them, 10-milligram hydrocodone" provides sufficient conflicting evidence to require the trial court to issue the lesser-included instruction e*x mero motu.*

This testimony does not create a conflict to warrant the lesser-included instruction. The "10-milligram hydrocodone" merely relates to the dosage or strength of the hydrocodone, the active ingredient in the tablets. Under *Ellison,* the total weight of the pills is considered to determine whether the statutory threshold is met, not just the weight of the active ingredient. *Ellison*, 366 N.C. at 442, 738 S.E.2d at 163-64. The CI was not referencing the total weight. Analyst Chancey's testimony provided the total weight of the tablets from her laboratory analysis to meet the State's burden.

The evidence presented at trial tended to show Defendant sold to the CI twenty tablets containing hydrocodone weighing a total of 8.47 grams, satisfying all essential elements of the trafficking in opium charge from the 4 February 2016 incident. We

find no error, and certainly no plain error, in the trial court not instructing the jury *ex mero motu* on the lesser-included offense of selling a controlled substance. Defendant's argument for plain error review is overruled.

## V. Conclusion

Defendant's argument that the trial court committed any error, including plain error, by not instructing the jury *ex mero motu* on the lesser-included offense of selling a controlled substance is without merit. Defendant received a fair trial, free from prejudicial errors he preserved or argued. We find no error in the jury's verdicts or in the judgment entered upon. *It is so ordered.*

NO ERROR.

Judges ZACHARY and BROOK concur.