IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-940

Filed 17 September 2025

Gaston County, Nos. 23 CRS 001542, 23 CRS 001543, 23 CRS 207905

STATE OF NORTH CAROLINA

v.

CARLTON DEPRECE THOMAS, Defendant.

Appeal by Defendant from judgments entered 11 April 2024 by Judge David A. Phillips in Gaston County Superior Court. Heard in the Court of Appeals 27 August 2025.

*Attorney General Jeff Jackson, by Special Deputy Attorney General M. Denise Stanford, for the State.*

*Dunn, Pittman, Skinner & Ashton, PLLC, by Rudolph A. Ashton, III, for Defendant.*

GRIFFIN, Judge.

Defendant Carlton Deprece Thomas appeals from the trial court's judgments entered upon jury verdicts finding him guilty of multiple felonies. Defendant contends the trial court erred by denying his motions to dismiss and to limit the trafficking charges, by allowing the State's requested jury instructions, by sentencing him to consecutive sentences for both trafficking offenses, and by allowing fatally defective verdict and judgment forms in 23-CRS-1542. We disagree and hold Defendant received a fair trial free from error.

## I.    Factual and Procedural Background

On 11 April 2024, a jury found Defendant guilty of numerous crimes related to a high speed chase and the possession of controlled substances.  Evidence presented at trial tended to show the following:

On 10 January 2023, two North Carolina highway patrolmen were parked on the side of I-85 near the border of Mecklenburg County and Gaston County when Defendant passed them going 105 miles per hour in an orange Honda Civic.  They immediately activated their lights and began pursuing Defendant.  Defendant did not stop and led them on an approximately ten-mile, high-speed chase.  After an additional patrolman deployed a tire deflation device, Defendant began throwing bags filled with a white powdery substance out of his vehicle.  Highway patrol conducted a pit-maneuver on Defendant's vehicle, removed him from his vehicle, and arrested him.

Law enforcement noticed three areas on the road where the white powder landed but only recovered one intact bag still holding the substance.  Inside of Defendant's vehicle, law enforcement found two large sandwich bags containing the white powdery substance.  Law enforcement also found, in the ditch next to Defendant's car, a Yeti cooler containing multiple smaller baggies with the white powder inside of them and a digital scale.

Following his arrest and the search of the vehicle and surrounding areas, Defendant was indicted by a grand jury on sixteen different counts related to the

chase. Defendant's matter came on for trial in Gaston County Superior Court on 8 April 2024. At trial, a forensic analyst working for the North Carolina State Crime Lab testified her analysis of the white substance contained in the large bag recovered from Defendant's car showed the mixture contained methamphetamine, fentanyl, and ANPP—a precursor to fentanyl.

At the close of the State's evidence, Defendant moved to dismiss the charges against him. The trial court denied his motion in part. Defendant later renewed his motion to dismiss following the close of evidence and also moved to limit the trafficking charges to either those for methamphetamine or for opium.[1] The trial court denied those motions as well.

The jury returned a verdict finding Defendant guilty of trafficking opium by possession of twenty-eight grams or more, trafficking opium by transportation of twenty-eight grams or more, trafficking methamphetamine by possession of twenty-eight grams or more but less than 200 grams, trafficking methamphetamine by transportation of twenty-eight grams or more but less than 200 grams, felony fleeing to elude arrest, driving while his license was revoked, speeding, and reckless driving.

Defendant timely appeals.

---

[1] We note here Defendant was convicted of two sets of charges. For both methamphetamine and for opium/opiates, Defendant was convicted for trafficking by possession and for trafficking by transportation. Because Defendant only disputes whether substantial evidence of the requisite weight of each substance was presented, we elect to use language only addressing the convictions for trafficking by possession, although our holding applies to both sets of convictions with equal weight. Because it is not at issue, we similarly elect to refer to the opium/opiate convictions as convictions for trafficking in opium for ease of reading.

## II.    Analysis

Defendant argues the trial court erred by denying his motion to dismiss and motion to limit the trafficking charges against him.  Defendant also argues the trial court erred in its instructions to the jury, erred during sentencing, and that there were fatal defects in the verdict and judgment forms.  We disagree.

### A. Motion to Dismiss

Defendant argues the trial court erred by denying his motions to dismiss and to limit the trafficking charges to either methamphetamine or opium because only one bag of white powder was tested.  Specifically, the bag held 36.37 grams of a mixture comprised of both methamphetamine and fentanyl which, Defendant contends, was insufficient to support convictions for both trafficking charges as it is mathematically impossible for the bag to have contained twenty-eight grams of each substance independently.  Therefore, Defendant argues, the State inherently could not have met its burden of providing substantial evidence necessary to support convictions for both trafficking in methamphetamine and trafficking in opium.

When ruling on a defendant's motion to dismiss, a trial court determines "only whether there is substantial evidence of each essential element of the crime and that the defendant is the perpetrator." *State v. Golder*, 374 N.C. 238, 249, 839 S.E.2d 782, 790 (2020) (citation and internal marks omitted).  Stated differently, "'if there is more than a scintilla of competent evidence to support the allegations in the warrant or indictment, it is the court's duty to submit the case to the jury.'" *State v. Gillard*, 386

N.C. 797, 832, 909 S.E.2d 226, 258 (2024) (quoting *State v. Horner*, 248 N.C. 342, 344–45, 103 S.E.2d 694, 696 (1958)).  When determining whether substantial evidence exists, the evidence must be "'considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom.'"  *Golder*, 374 N.C. at 249–50, 839 S.E.2d at 790 (quoting *State v. Winkler*, 368 N.C. 572, 574, 780 S.E.2d 824, 826 (2015)).  We review de novo whether the State met its burden in presenting substantial evidence of each essential element of the crime charged.  *Gillard*, 386 N.C. at 832, 909 S.E.2d at 258 (citation omitted).

Defendant was convicted under section 90-95 of the North Carolina General Statutes for trafficking in both methamphetamine and opium by possession.  Sections 90-95(h)(3b) and 90-95(h)(4) use similar language and address methamphetamine and opium trafficking, respectively.  Section 90-95(h)(3b) provides:

> Any person who sells, manufactures, delivers, transports, or possesses 28 grams or more of methamphetamine or any mixture containing such substance shall be guilty of a felony which felony shall be known as "trafficking in methamphetamine" and if the quantity of such substance or mixture involved:
>
> a. Is 28 grams or more, but less than 200 grams, such person shall be punished as a Class F felon. . . .

N.C. Gen. Stat. § 90-95(h)(3b) (2023).  Section 90-95(h)(4) similarly provides:

> Any person who sells, manufactures, delivers, transports, or possesses four grams or more of opium, opiate, or opioid, or any salt, compound, derivative, or preparation of opium,

> opiate, or opioid (except apomorphine, nalbuphine, analoxone and naltrexone and their respective salts), including heroin, or any mixture containing such substance, shall be guilty of a felony which felony shall be known as "trafficking in opium, opiate, opioid, or heroin" and if the quantity of such controlled substance or mixture involved:
>
> . . .
>
> c. Is 28 grams or more, such person shall be punished as a Class C felon. . . .

N.C. Gen. Stat. § 90-95(h)(4) (2023).

The essential elements of trafficking in methamphetamine are that a defendant "'(1) knowingly possessed . . . methamphetamine, and (2) that the amount possessed was greater than 28 grams.'" *State v. Christian*, 288 N.C. App. 50, 53, 884 S.E.2d 492, 497 (2023) (citing *State v. Shelman*, 159 N.C. App. 300, 305, 584 S.E.2d 88, 93 (2003)); N.C. Gen. Stat. § 90-95(h)(3b). Likewise, the essential elements of trafficking in opium are that a defendant (1) knowingly possessed opium, and (2) the amount possessed was greater than twenty-eight grams. N.C. Gen. Stat. § 90-95(h)(4). Section 90-95(h) "explicitly provides that a defendant's criminal liability shall be based on the total weight of the mixture involved[,]" *State v. Ellison*, 366 N.C. 439, 440, 738 S.E.2d 161, 162 (2013), by including the language "if the quantity of such controlled substance or mixture involved[,]" immediately before setting out progressively higher punishments as the weight of the substance or mixture increases, N.C. Gen. Stat. §§ 90-95(h)(3b)(a)-(c), (4)(a)-(c).

In *State v. Ellison*, our Supreme Court addressed whether section 90-95(h)(4) "applies in cases involving prescription pharmaceutical tablets and pills." 366 N.C. at 440, 738 S.E.2d at 162. There, the defendants were arrested and convicted for trafficking in twenty-eight grams or more of a mixture containing opium after they sold ninety dihydrocodeinone pills weighing 75.3 grams. *Id.* The Court held a mixture means "'a portion of matter consisting of two or more components that do not bear a fixed proportion to one another and that however thoroughly commingled are regarded as retaining a separate existence.'" *Id.* at 442, 738 S.E.2d at 163 (quoting *Chapman v. United States*, 500 U.S. 453, 462 (1991)). As stated above, the Court held section 90-95(h)(4) "explicitly provides that a defendant's criminal liability shall be based on the total weight of the mixture involved." *Id.* at 440, 738 S.E.2d at 162. We find this logic controlling with respect to section 90-95(h)(3b) as well.

"In resolving issues of statutory construction, we look first to the language of the statute itself." *State v. Applewhite*, 386 N.C. 431, 435, 904 S.E.2d 749, 754 (2024) (citation and internal marks omitted). Moreover, "'[i]t is well settled that the General Assembly and not the judiciary determines the minimum and maximum punishment which may be imposed on those convicted of crimes.'" *Ellison*, 366 N.C. at 443, 738 S.E.2d at 164 (quoting *State v. Perry*, 316 N.C. 87, 101, 340 S.E.2d 450, 459 (1986)). We "give every word of the statute effect, presuming that the legislature carefully chose each word used," *State v. Daw*, 386 N.C. 468, 479, 904 S.E.2d 765, 774 (2024) (citations and internal marks omitted), and, where the language is unambiguous, "it

is understood in accordance with its plain meaning," *Applewhite*, 386 N.C. at 435, 904 S.E.2d at 754 (citations and internal marks omitted).

Here, our precedent in *Ellison*, read in conjunction with the plain meaning of section 90-95, mandates we affirm the trial court's order denying Defendant's motion to dismiss. The pertinent language of section 90-95 used in both trafficking offenses—"any mixture containing such substance" and "if the quantity of such substance or mixture involved"—encompasses Item 1a of the State's Motion Exhibit 1. N.C. Gen. Stat. §§ 90-95(h)(3b), (4). The powder, as testified to by the State's forensic analyst, was a *mixture containing both* controlled substances: methamphetamine and fentanyl. And, because "criminal liability shall be based on the total weight of the mixture involved[,]" *Ellison*, 366 N.C. at 440, 738 S.E.2d at 162, there was sufficient evidence of a mixture meeting the threshold weight, twenty-eight grams, containing both controlled substances. Therefore, the essential elements of trafficking in a mixture that contains either, or both, methamphetamine and fentanyl are that a defendant (1) knowingly possess methamphetamine or fentanyl, and (2) that the amount of the mixture possessed was greater than twenty-eight grams.

Defendant's argument would have us rewrite the statute. By arguing that only a fifty-six gram mixture would suffice to make him liable under both sections of the statute, Defendant requests we read into section 90-95 that "any mixture containing [twenty-eight grams of] such substance" and "the quantity of such substance or

mixture [containing twenty-eight grams of such substance] involved." This we will not do. *See Ferguson v. Riddle*, 233 N.C. 54, 57, 62 S.E.2d 525, 528 (1950) ("We have no power to add to or subtract from the language of the statute.").

We recognize the language chosen by the General Assembly leaves open the possibility that a criminal defendant may be held liable for trafficking where they have a single gram of a controlled substance mixed with twenty-seven grams of an uncontrolled substance. However, the plain language of the statute mandates the result here. Thus, even if Item 1a of the State's Motion Exhibit 1 only contained a single gram of methamphetamine and a single gram of fentanyl, it also contained thirty-four and thirty-seven hundredths of another substance bringing the total weight within the trafficking statute's requirements. "Though we are not unmindful of the harsh results imposed by the statute, to conclude otherwise would encroach upon the role of the legislative branch." *Ellison*, 366 N.C. at 444, 738 S.E.2d at 164 (citing N.C. Const. art. I, § 6).

In sum, the State presented sufficient evidence to warrant submission of both charges to the jury because Defendant's criminal liability was based on the total weight of the mixture involved, and the mixture met the threshold weight under both statutes.

## B. Jury Instructions

Defendant contends the trial court erred by allowing the State's requested jury instructions. Specifically, Defendant argues including the language "any mixture

containing methamphetamine" and "any mixture containing opi[um]" as contained in section 90-95(h) was confusing to the jury. As this is essentially an attempt to take another bite of the apple above, we disagree.

We review a trial court's decision to give certain jury instructions de novo. *State v. Greenfield*, 375 N.C. 434, 440, 847 S.E.2d 749, 754 (2020).

Trial courts are "not required to follow any particular form" when giving jury instructions "as long as the instruction adequately explains each essential element of the offense." *State v. Walston*, 367 N.C. 721, 731, 766 S.E.2d 312, 319 (2014) (citations and internals marks omitted). Moreover, North Carolina courts generally approve "of jury instructions that are consistent with the pattern instructions." *Id.* (citation and internal marks omitted).

Here, the requested instructions and use of the phrase "any mixture containing" methamphetamine or opium are consistent with our Supreme Court's holding in *Ellison*, mirror the statutory language in section 90-95(h), and are consistent with pattern jury instruction 260.17. Therefore, the instruction appropriately conveyed the essential elements of the crime for which the jury was being instructed upon. Defendant's argument is without merit. Accordingly, we hold the trial court did not err when instructing the jury on the essential elements of sections 90-95(h)(3b) and 90-95(h)(4).

## C. Sentencing

Defendant contends the trial court erred by sentencing him to consecutive

sentences for both trafficking offenses, arguing that the error resulted in double jeopardy. Specifically, Defendant contends that "the amount of fentanyl and the amount of methamphetamine are essential elements to the charges due to their weight" and that "[b]ecause there is a 28 gram threshold for both methamphetamine and fentanyl in this case, it is impossible to determine to which drug it should apply."

As a preliminary matter, the parties contest whether this issue is properly preserved. However, both acknowledge that "[a] sentence that was 'unauthorized at the time imposed, exceeded the maximum authorized by law, was illegally imposed, or is otherwise invalid as a matter of law' may be reviewed by this Court even where no objection or motion was made before the trial court." *State v. Hernandez*, 293 N.C. App. 283, 300–01, 899 S.E.2d 899, 913 (2024) (quoting N.C. Gen. Stat. § 15A-1446(d)(18) (2023)). Therefore, the issue is properly before us, and we review Defendant's allegation de novo. *Id.* (citing *State v. Wright*, 212 N.C. App. 640, 642, 711 S.E.2d 797, 799 (2011)).

"The Fifth Amendment of the United States Constitution, made applicable to the States by the Fourteenth Amendment, protects against double jeopardy, which includes multiple punishments for the same offense." *State v. Hall*, 203 N.C. App. 712, 716–17, 692 S.E.2d 446, 450 (2010) (first citing *State v. Cameron*, 283 N.C. 191, 197–98, 195 S.E.2d 481, 485 (1973); and then citing U.S. Const. amend. V).

> The test of [double jeopardy, or] former jeopardy[,] is not whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same

offense. . . . [I]f proof of an additional fact is required in the one prosecution, which is not required in the other, even though some of the same acts must be proved in the trial of each, the offenses are not the same, and the plea of former jeopardy cannot be sustained[.]

*Id.* at 716–17, 692 S.E.2d at 450 (quoting *Cameron*, 283 N.C. at 198, 195 S.E.2d at 486) (first and second alterations in original); *accord Blockburger v. United States,* 284 U.S. 299, 304 (1932).

As previously mentioned, the elements under sections 90-95(h)(3b) and 90-95(h)(4) each contain requirements that the other does not. Under section 90-95(h)(3b), the first essential element is that a defendant "(1) knowingly possessed *methamphetamine,*" *Christian*, 288 N.C. App. at 53, 884 S.E.2d at 497 (emphasis added), whereas, the first essential element of trafficking in opium is that a defendant "(1) knowingly possessed *opium,*" N.C. Gen. Stat. § 90-95(h)(4) (emphasis added). Furthermore, the twenty-eight-gram threshold is determined by the weight of the controlled substance *or mixture containing* the controlled substance. *See Ellison*, 366 N.C. at 440, 738 S.E.2d at 162. Again, the statute does not require all twenty-eight grams to be either completely methamphetamine or completely fentanyl; rather, the "mixture containing such substance" must weigh at least twenty-eight grams. N.C. Gen. Stat. §§ 90-95(h)(3b), (4). In sum, "[n]either the presence nor the amount" of the methamphetamine in the mixture "had any bearing on Defendant's conviction for possession [and transportation] of [fentanyl], and *vice versa.*" *Hall*, 203 N.C. App. at 718, 692 S.E.2d at 451.

Thus, the statutory provisions in contention each require the finding of a different controlled substance as a key element for prosecution, and each provision does not require the controlled substance to constitute all twenty-eight or more grams. Accordingly, we hold the trial court did not err when sentencing Defendant to consecutive sentences pursuant to sections 90-95(h)(3b) and 90-95(h)(4).

**D. Verdict and Judgments**

Defendant argues the verdict and judgment forms in 23-CRS-1542 were fatally defective because they failed to specifically name fentanyl—the opium contained in the mixture seized from Defendant. This is a question of law that we review de novo. *See State v. De la Sancha Cobos*, 211 N.C. App. 536, 540, 711 S.E.2d 464, 467 (2011).

"Where there is a fatal defect in the indictment, verdict or judgment which appears on the face of the record, a judgment which is entered notwithstanding said defect is subject to a motion in arrest of judgment." *State v. Wilson*, 128 N.C. App. 688, 691, 497 S.E.2d 416, 419 (1998) (citing *State v. Davis,* 282 N.C. 107, 117, 191 S.E.2d 664, 670 (1972)). Our Supreme Court has held that "a verdict, apparently ambiguous, may be given significance and correctly interpreted by reference to the allegations, the facts in evidence, and the instructions of the court." *State v. Best*, 265 N.C. 477, 481, 144 S.E.2d 416, 419 (1965) (citation modified).

In this case, although the verdict solely contained the terms "opium/opiates" and not fentanyl, the indictments contained statements referencing fentanyl as the basis of the charges; the State's forensic scientist testified regarding the positive test

for fentanyl; the trial court instructed the jury that fentanyl is opium; and the State submitted Exhibit 10, which lists fentanyl as a result of the laboratory test under Item 1a. Taking all the aforementioned facts into account, it appears that the jury properly understood the evidence and the verdicts in 23-CRS-1542 were based upon fentanyl. *See id.* ("When the warrant, the evidence and the charge are considered, it appears clearly the jury, by their verdict, found [the] defendant guilty of operating a motor vehicle on the public street of Graham while under the influence of intoxicating liquor.").

Accordingly, the verdict and judgment forms were not fatally defective.

## III. Conclusion

For the aforementioned reasons, we hold Defendant received a fair trial free from error.

NO ERROR.

Judges CARPENTER and MURRY concur.